UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 13-cv-6467 (RJS)

GIRLEENE MOORE,

Plaintiff,

VERSUS

VERIZON, *ET AL.*,

Defendants.

OPINION AND ORDER
February 5, 2016

RICHARD J. SULLIVAN, District Judge:

Plaintiff Girleene Moore, proceeding *pro se*, brings this action against her former employer, Verizon New York, Inc. ("Verizon"), and a number of her team leaders and supervisors (collectively "Defendants"), alleging that Defendants discriminated against her based on her race, gender, age, and disability in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*) ("ADEA"), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*) ("ADA"), the New York State Human Rights Law (N.Y. Exec. Law § 296) ("NYSHRL"), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8–107 *et seq.*) ("NYCHRL"). (Doc. Nos. 22 (Plaintiff's First Amended Complaint ("FAC")); 26 (Order Granting Plaintiff's Letter Request to Add NYCHRL Claims).) She further alleges that Defendants created a hostile work environment and retaliated against her after she filed complaints with Verizon's Office of Equal Employment Opportunities ("EEO") and the New York Equal Employment Opportunity Commission ("EEOC"). (*Id.*)

Now before the Court is Defendants' motion to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted. (Doc. No. 30.) For the reasons that follow, Defendants' motion is GRANTED.

## I. Background

### A. Facts[1]

Plaintiff, a now 62-year-old African American woman who suffers from asthma and back pain, began working at Verizon as a Business Representative in 2000. (Declaration of Girleene Moore dated April 11, 2014, Doc. No. 37, Ex. G ("EEOC Intake Questionnaire"); FAC at 2.) Plaintiff alleges that, despite a strong sales record, beginning in 2011 "Verizon managers conspired to portray [her] as incompetent, a corporate saboteur and a worthless employee." (Opp'n at 2.) The complaint identifies a number of defendants allegedly responsible for this discrimination, including Chanele Boyd ("Boyd"), Shanell Dixon ("Dixon"), Paul Donovan ("Donovan"), Annette Herrschaft ("Herrschaft"), Ti-Shawn A. Kinsey ("Kinsey"), Jennifer Leonard ("Leonard"), Julane Lowe ("Lowe"), Christopher Shea ("Shea"), and Joseph McLaughlin ("McLaughlin"). Due to this alleged campaign of mistreatment, Plaintiff complained to her Union, the Communications Workers of America ("CWA"), and filed at least one complaint with Verizon's EEO, before submitting a complaint to the EEOC on January 22, 2013. (FAC at 1–2, 6; Declaration of Girleene Moore dated April 11, 2014, Doc. No. 37, Exs. C–G (Union Grievances and EEOC intake questionnaire).) These complaints alleged discrimination based on age, race, and color and complained of co-workers' violations of company policy, including: nepotism, inappropriate sexual conduct between her managers, inadequate working conditions, and defective hardware and software. (Opp'n at 2.)

Plaintiff asserts that Dixon, her immediate supervisor, refused to address her complaints regarding inadequate office equipment, threatened to demote her to a sales representative if she continued to complain about work conditions and technological malfunctions, and failed to invite her to group meetings. (FAC at 2, 6; Mem. at 3–4; Opp'n at 2–3.) Plaintiff further alleges that she filed an internal claim of age discrimination with Verizon's EEO against Dixon in April 2011, in which she alleged that Dixon made comments suggesting that Plaintiff retire – "why don't you retire" and "are you old enough to retire" – on a "persistent" basis, once remarked that Plaintiff suffered hearing loss due to age, and seated Plaintiff away from her younger co-workers. (FAC at 2, 6; Mem. at 3–4; Opp'n at 2–3.) Shortly after Plaintiff's complaint, Verizon transferred Dixon to another department. (FAC at 6.)

In 2012, Kinsey replaced Dixon as Plaintiff's direct manager. (FAC at 2.) Plaintiff alleges that Kinsey – whose "best friend was [] Dixon" – refused to address Plaintiff's complaints regarding office equipment and threatened to demote Plaintiff if she "didn't leave her alone about work related issues." (FAC at 2.) Additionally, Plaintiff alleges that Kinsey subjected Plaintiff's co-worker Michael Carter ("Carter"), an African American man in his fifties, to excessive monitoring and threatened Plaintiff by inquiring if she "want[ed] some of this," a phrase Plaintiff alleges referred to excessive monitoring. (FAC at 3.)

---

[1] The following facts, which are presumed to be true for purposes of this motion, *ATSI Commc'ns, Inc.*, 493 F.3d 87, 98 (2d Cir. 2007), are drawn principally from Plaintiff's First Amended Complaint (FAC). In deciding Defendants' instant motion, the Court has also considered Defendants' memorandum of law in support of their motion to dismiss (Doc. No. 32 ("Def. Mem.")), Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss (Doc. No. 36 ("Opp'n")), Defendants' reply (Doc. No. 38 ("Reply")), and the documents submitted in support thereof (Doc. Nos. 30–31, 37).

2

From 2011 through 2013, Herrschaft served as Plaintiff's acting supervisor – presumably a manager inferior to Dixon and Kinsey, although the complaint is unclear as to the hierarchy of supervisors and titles at Verizon. (FAC at 3.) On September 4, 2012, Plaintiff attended a training session during which she claims Herrschaft hurried her through materials, poked her in the back, and yelled at her when she requested additional time to complete a training exam. (FAC at 3, 6–7.) On September 5, 2012, one day later, Plaintiff alleges that Shea, her second-level supervisor, angrily confronted Plaintiff regarding the incident with Herrschaft, monitored her excessively, and caused her anxiety that resulted in a period of absence from work. (FAC at 4, 7.) Following this altercation, Plaintiff asserts that Shea "used profanity at [her], union busting statements, [a] threatening tone, and hostile body language" in his interactions with Plaintiff, and that Plaintiff's peers warned her that Shea was "out to get" her. (FAC at 4.) Plaintiff further claims that at some point in September 2012, Shea filed "false charges" against Plaintiff with the Verizon EEO in which he claimed that Plaintiff used the "N-word" at the office. (FAC at 4, 7.)

In September 2012, Shea and Kinsey met with Plaintiff and informed her that several of her phone calls with customers on September 5, 2012 had been monitored. (FAC at 4.) The managers stated that Plaintiff had intentionally dropped four calls during the monitored period, and they suspended her without pay for two weeks, notwithstanding Plaintiff's insistence that the dropped calls were not intentional but rather the result of faulty computer equipment. (*Id.*)

On January 14, 2013, Leonard, another team leader, and Shea held a meeting with Plaintiff in which they accused Plaintiff of dropping customer calls during a monitored period on January 11, 2013. (FAC at 4.) As a result, Verizon suspended Plaintiff without pay for thirty days. (FAC at 5, 9.) Plaintiff alleges that upon her return from suspension, she encountered Leonard, who tried to send her home and later refused to apologize for miscalculating the length of her suspension. (FAC at 6.)

Plaintiff filed a charge of discrimination with the EEOC on January 22, 2013, alleging that Verizon and a number of her supervisors had discriminated against her on the basis of race, age, and color; she also asserted that Verizon and her supervisors had retaliated against her for filing a prior internal complaint. (EEOC Intake Questionnaire).[2]

On June 20, 2013, Boyd, also an immediate supervisor, and Leonard held a disciplinary hearing with Plaintiff. They stated that Plaintiff had mistreated several customers and failed to safeguard customer accounts in violation of company policy. (FAC at 4–5, 9; Opp'n at 5.) A few days later, Plaintiff began company-approved disability leave. (FAC at 9.)

On June 28, 2013, four days after the beginning of Plaintiff's disability leave, Donovan terminated Plaintiff. (FAC at 1; Opp'n at 17.) Plaintiff alleges that she later learned Donovan fired her "because he was mad[] and angry" from "listening to false rumors" that Plaintiff had left work early in an attempt to avoid discipline following her meeting with Boyd and Leonard. (FAC at 5.) Additionally, Plaintiff claims that Donovan was in such a "rush to get [her] off the payroll" that he neglected to stop

---

[2] Plaintiff's First Amended Complaint appears to mistakenly allege that she filed the EEOC complaint in February 2013. (FAC 1.)

3

delivery on a retirement plaque that Plaintiff received in July 2013. (FAC at 9.)

Although Plaintiff did not directly interact with higher-level supervisors Lowe, McLaughlin, and Donovan, she names them as Defendants in her First Amended Complaint, largely on the grounds that they failed to correct the discriminatory conduct of her more direct supervisors. Specifically, Plaintiff claims that Lowe, her second level manager from 2011 to 2013, "turned a blind eye" to the "malicious actions" of Dixon and Kinsey, promoted nepotism by allowing the married Herrschaft and Shea to work together, "targeted" Plaintiff, and "failed to acknowledge [Plaintiff's] EEO [and] EEOC complaints." (FAC at 3.) She further alleges that senior managers McLaughlin and Donovan were aware of the discrimination Plaintiff faced and failed to intervene. (FAC at 4–5, 9.) Plaintiff charges that Donovan created a hostile work environment by threatening to fire union members, sending negatively-worded emails, failing to provide adequate computers and voice systems, and promoting Shea to a second level manager position. (FAC at 4–5.) With respect to McLaughlin, Plaintiff asserts that he was friendly with some younger workers but never "addressed [Plaintiff] in a pleasant manner." (FAC at 5.)

### B. Procedural History

Plaintiff received a right to sue letter from the EEOC on June 11, 2013 (FAC at 1), and she commenced this action in the District Court on September 10, 2013 (Doc. No. 2). Plaintiff filed her First Amended Complaint on January 21, 2014 (FAC), and the Court permitted her to add claims under NYCHRL on February 12, 2014 (Doc. No. 26). Now before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dated March 14, 2014. (Doc. No. 32.) Plaintiff filed her opposition on April 14, 2014 (Doc. No. 36), and the motion was fully briefed on April 28, 2014 (Doc. No. 38). Following briefing, the Court denied the motion without prejudice to renewal in order to permit the parties to attempt to resolve this matter in mediation. (*See* Doc. No. 39.) However, on March 11, 2015, Defendants informed the Court that mediation had been unsuccessful and requested that the Court rule on their motion to dismiss (Doc. No. 45; *see also* Doc. No. 46 (Final Report of Mediator)), whereupon the Court reinstated the motion (Doc. No. 47).

### II. STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc.*, 493 F.3d at 98; *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court notes that where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and "'interpret [it] to raise the strongest arguments that [it] suggests.'" *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v.*

4

*Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).[3] Even after the Supreme Court's ruling in *Iqbal*, which imposed heightened pleading standards for all complaints, *pro se* complaints are to be liberally construed. *See Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997).

Proceedings on a motion to dismiss are informed by the burden-shifting framework established for employment discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Under this framework, the employee bears the initial burden of producing evidence sufficient to support a *prima facie* case of discrimination. *Id.* at 802. And "[w]hile a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal citations and quotation marks omitted); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Accordingly, the elements of a *prima facie* case provide "an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible" to survive a motion to dismiss. *Sommersett v. City of New York*, No. 09-cv-5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011); *see also Ndremizara v. Swiss Re Am. Holding Corp.*, No. 12-cv-5769 (KMK), 2015 WL 1262146, at *11 (S.D.N.Y. Mar. 19, 2015) (applying the *Sommersett* rule). Thus, a plaintiff alleging employment discrimination claims must "include reference to sufficient facts to make [his or her] claim plausible . . . in light of the presumption that arises in the plaintiff's favor under *McDonnell Douglas* in the first stage of the litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015).

### III. DISCUSSION

#### A. Procedural Bars

##### 1. Exhaustion

As an initial matter, Defendants assert that Plaintiff has failed to properly exhaust her claims of gender and disability discrimination, and therefore argue that those claims should be dismissed. (Mem. at 11–12.) Indeed, there appears to be no dispute that Plaintiff did not specifically allege gender and disability discrimination in her complaint to the EEOC as required by the federal Title VII and ADA statutes. (Mem. at 11; Opp'n at 9–11.) *See Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) ("a litigant *must* exhaust available administrative remedies in a timely fashion" in order to gain access to the federal courts); *see also Bernardo v. Am. Idol Prods., Inc.*, No. 10-cv-6487 (CM) (HBP), 2010 WL 4968177, at *2 (S.D.N.Y. Dec. 6, 2010) (holding that the exhaustion requirement "applies with equal force to *pro se* litigants").

Plaintiff, however, argues that her claims should proceed pursuant to a narrow exception to the exhaustion requirement – which allows new claims that are "reasonably related" to those stated in an EEOC charge to be filed in federal court.

---

[3] Although Plaintiff's opposition brief was "prepared with the assistance of counsel barred in the State of New York," Plaintiff asserts that she "drafted the First Amended Complaint without the benefit of counsel." (Opp'n at 7 n.3.) Accordingly, the Court will treat this as a *pro se* matter.

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001). As relevant here, a claim first alleged in federal court is reasonably related to claims raised before the EEOC "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Littlejohn*, 795 F.3d at 322 (quoting *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003)).

Unfortunately, the parties have supplied the Court with only Plaintiff's EEOC Intake Questionnaire, omitting Plaintiff's EEOC complaint itself and the attachment to Plaintiff's questionnaire. (*See* EEOC Intake Questionnaire; Decl. of Howard M. Wexler, dated March 14, 2014, at ¶ 6, Ex. D.) Without these additional items, the Court cannot determine which claims Plaintiff has failed to exhaust. Accordingly, the Court will not dismiss Plaintiff's claims for failure to exhaust on this motion. *See* 42 U.S.C. § 2000e-5(f)(1) (identifying the conditions precedent to a Title VII case as the timely filing of an EEOC charge, the receipt of a right-to-sue letter from the EEOC, and the timely institution of a court action); *see EEOC v. Standard Forge & Axle Co.*, 496 F.2d 1392 (5th Cir. 1974) (noting that a plaintiff need plead only Title VII's conditions precedent consistent with Rule 9(c) of the Federal Rules of Civil Procedure).

### 2. Preemption

In addition, Defendants perfunctorily assert that "*several* of Plaintiff's allegations" in this lawsuit are encompassed in the collective bargaining agreement between Verizon and the CWA (Reply at 9), and are therefore preempted by the New York Labor Management Relations Act § 301 ("LMRA") (Mem. at 18–19 (emphasis added)). While an employee may be "required to attempt to exhaust any grievance or arbitration remedies provided in [his or her] collective bargaining agreement" before bringing suit in federal court, *Vera v. Saks & Co.*, 335 F.3d 109, 118 (2d Cir. 2003), Defendants here do not specifically identify which legal claims they believe to be covered by the collective bargaining agreement. (Mem. at 18–19; Reply at 9.) Accordingly, the Court also declines to dismiss Plaintiff's claims on preemption grounds at this time.

### B. Appropriate Parties

Finally, the Court observes that plaintiffs may not bring claims under the federal Title VII, ADEA, and ADA statutes against individual defendants. Indeed, Second Circuit precedent clearly holds that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII, ADEA, and ADA. *Littlejohn*, 795 F.3d at 313 (Title VII); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (ADA); *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (summary order) (ADEA). Accordingly, Plaintiff's federal claims against the individual defendants may not proceed.

Although NYSHRL and NYCHRL – the state and city law analogues of the federal statutes discussed above – *do* allow for claims to be brought against individual defendants in some circumstances, they too impose restrictions on liability for individual defendants. Both statutes provide that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [provision], or to attempt to do so." N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8–107(6). An individual is only liable, however, where he or she "actually participate[d] in the conduct" from

6

which the claim arises. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (citation omitted). Moreover, accessory liability is only available "where a primary violation has been established" as to the employer principal. *Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 597 (S.D.N.Y. 2012) (citation omitted). As set forth below, Plaintiff's failure to plead a primary violation of Title VII, ADEA, ADA, NYSHRL, and NYCHRL is fatal as to her claims against the individual defendants.

C. Race and Gender Discrimination

Plaintiff claims that her employer and supervisors discriminated against her on the basis of her race and gender when Defendants suspended her and later terminated her employment. (Opp'n at 18–21.)[4] She alleges that this conduct violated federal, state, and city law. (*Id.*)

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). NYSHRL includes a similar provision and is analytically identical to its federal analogue. *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 13 (2d Cir. 2013). The Second Circuit recently clarified that a "relaxed" pleading standard applies on a motion to dismiss a Title VII or NYSHRL claim:

> [W]hile the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation – prior to the employer's coming forward with the claimed reason for its action – the plaintiff does not need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements.

*Littlejohn*, 795 F.3d at 311; *see also id.* at 307. Accordingly, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.*

NYCHRL, the City of New York's antidiscrimination law, makes it unlawful "[f]or an employer . . . because of an individual's . . . race, . . . color, . . . [or] gender, . . . to discharge from employment . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. City Admin. Code § 8–107(1)(a). However, the Second Circuit has held that

---

[4] While Plaintiff's EEOC complaint refers to color discrimination between lighter and darker skinned African Americans (EEOC Intake Questionnaire), the allegation does not reappear in Plaintiff's First Amended Complaint. Accordingly, the Court assumes that Plaintiff does not intend to pursue an independent claim for color discrimination in this action. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.5 (4th Cir. 2002) ("Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.").

7

"courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuxreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). While claims brought under the federal, state, and city law are all guided by Title VII's *prima facie* test, *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012), the Second Circuit holds that NYCHRL requires an independent and more liberal construction than its federal and state counterparts, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("[C]laims under the City HRL [NYCHRL] must be reviewed independently from and 'more liberally' than their federal and state counterparts." (citation omitted)).

Here, the Court finds that, even under the minimal pleading standards discussed above, Plaintiff's First Amended Complaint does not state a claim for race discrimination. In fact, the only references in the complaint to Plaintiff's race involve her allegation that (1) Plaintiff and her "black male" co-worker, Carter, were subject to excessive monitoring by supervisors, and (2) Leonard monitored Plaintiff more than Leonard's "own team of Latino representatives or [Plaintiff's] peers." (FAC at 3, 7, 8; *see also* Mem. at 9, 20.) But these statements merely allege that two African American co-workers were subjected to excessive monitoring. The First Amended Complaint does not suggest that Plaintiff and Carter were the only African Americans working in the office, or even that they constituted a large percentage of the African Americans employed at their Verizon worksite; if anything, the complaint suggests the opposite. (*See generally* FAC at 4 (noting that Plaintiff's office was "90% minorities").) In short, without more, Plaintiff's allegations that only Plaintiff and Carter were subjected to closer monitoring does not support even a minimal inference of race-based discrimination. *See Erhunmwunse v. Edison Parking Corp.*, 301 F. Supp. 2d 278, 283 (S.D.N.Y. 2004) (showing that five other African-American employees were discharged did not establish a *prima facie* case at summary judgment without allegations "suggesting that the employees were fired around the same time, or that the African-American employees were terminated in disproportionate numbers").

Similarly, Plaintiff cannot sustain a claim for gender discrimination. In fact, her First Amended Complaint is entirely devoid of facts suggesting that she was the victim of discrimination based on her gender. In her briefing, Plaintiff states only that excessive monitoring, poor equipment, threats to demote, and other general claims of an unpleasant workplace were "intended to be offensive to [Plaintiff] as a woman." (Opp'n at 18–20.) This bald assertion – without any supporting facts in the operative complaint – falls far short of the federal pleading standards. *See Ochei v. Mary Manning Walsh Nursing Home Co., Inc.*, No. 10-cv-2548 (CM) (RLE), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) (rejecting the false syllogism of "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)" in a *pro se* case (quotation marks omitted)).

Of course, Plaintiff alleges many instances of what she considered to be "unfair" conduct by her supervisors, including their "refus[al] to address [Plaintiff's] work-related equipment and software issues;" "misuse[ing] authority by targeting [Plaintiff] for elimination;" "speaking to [Plaintiff] in a threatening manner and falsely accusing [Plaintiff] of using inappropriate racial language in the office;" and causing Plaintiff to be

8

"constantly monitored." (Opp'n at 19.) But these factual allegations, as pled, bear no link to a protected characteristic and reflect no cognizable adverse employment action.[5] Rather they demonstrate "'workplace difficulties entirely consistent with non-race-[based], non-gender-based personality disputes – disputes that are plainly not actionable under statutes intended to root out discrimination on the bases of certain statutorily defined protected characteristics.'" *Humphries v. City Univ. of N.Y.*, No. 13-cv-2641 (PAE), 2013 WL 6196561, at *8 (S.D.N.Y. Nov. 26, 2013) (quoting *Williams v. Time Warner Inc.*, No. 09-cv-2962 (RJS), 2010 WL 846970, at *4 (S.D.N.Y. Mar. 3, 2010), *aff'd* 440 F. App'x 7 (2d Cir. 2011)).

Moreover, even under NYCHRL's more liberal standard, Plaintiff fails to plead facts giving rise to an inference that Plaintiff's termination was motivated by race or gender discrimination. *See id.* at *12 (noting that NCYHRL plaintiffs must plead facts "that could give rise to a plausible inference that [a plaintiff's adverse employment action] occurred *because of* her race or gender discrimination"). Clearly, allegations that two individuals were monitored or that Plaintiff was "offended as a woman" by the rude behavior she experienced at work are insufficient to plead a violation of the city law. (Opp'n at 20.) Since Plaintiff fails to state a claim for race or gender discrimination under Title VII, NYSHRL, and NYCHRL, these claims are dismissed.

D. Age Discrimination

Plaintiff further claims that statements by her employer raise an inference that she was suspended or terminated because of her age in violation of federal, state, and city law. (Opp'n at 12–14.)

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a). The statute defines the class of persons protected as individuals at least 40 years of age. *Id.* at § 631(a). To establish a prima facie case under the ADEA, a plaintiff with an age discrimination claim must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Bucalo*, 691 F.3d at 129 (citation omitted). The Second Circuit recently extended the *Littlejohn* holding to ADEA claims, instructing that a plaintiff need only plausibly plead that he is "'a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Johnson v. Andy Frain Servs, Inc.*, No. 15-cv-1143, 2016 WL 210098, at *1 (2d Cir. Jan. 19, 2016) (summary order). The same analysis applies to claims under NYSHRL. *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012). Even under the more liberal NYCHRL, a plaintiff must allege facts giving rise to an inference of discrimination based on age to prevail. *See Gorzynski v. Jet Blue Airways Cop.*, 596 F.3d 93, 107 (2d Cir. 2010).

Plaintiff alleges that Dixon made several negative comments regarding Plaintiff's age – *i.e.*, "why don't you retire" and "are you old enough to retire" – and insulted Plaintiff with remarks that Plaintiff experienced hearing loss due to age. (FAC at 2, 6; *see*

---

[5] As discussed more fully below, monitoring an employee does not constitute an adverse employment action under the employment discrimination laws. *Fuller v. Instinet, Inc.*, 120 F. App'x 845, 847 (2d Cir. 2004).

*also* Mem. at 3–4; Opp'n at 2–3.) Certainly, "verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005) (citations omitted). However, stray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). "In determining whether a comment should be considered a stray remark, courts consider who made the remark, when the remark was made in relation to the termination [or other adverse employment action], the content of the remark, and the context in which the remark was made." *Woodward v. TWC Media Sols., Inc.*, No. 09-cv-3000 (BSJ) (AJP), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011) (citing *Pronin*, 383 F. Supp. 2d at 637). To determine whether a plaintiff has suffered an adverse employment action, courts in the Second Circuit "generally look to whether the plaintiff has suffered 'a materially adverse change in his employment status' or in the terms and conditions of his employment." *Kessler v. Westchester Cnty. Dept. of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).

Considered as a whole, Dixon's statements related to retirement or hearing loss are non-actionable stray remarks. First, Plaintiff does not allege that Dixon or Dixon's statements played any part in Plaintiff's alleged adverse employment actions. Here, Plaintiff has alleged only three adverse employment actions: one suspension in September 2012, another suspension in January 2013, and a termination in June 2013. (FAC at 6–8.) *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (defining an adverse employment action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" (citation omitted)). Therefore, Dixon, who had been replaced by Kinsey, was not Plaintiff's supervisor at the time of her suspensions and termination. *See Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (holding that isolated comments made by non-decisionmakers are not probative of discriminatory intent). Additionally, Dixon's alleged remarks regarding Plaintiff's age occurred at least months before Plaintiff's first suspension and nearly a year prior to her termination, and they are not alleged to have arisen in a context at all related to the decision to suspend and later terminate Plaintiff. Under the circumstances, the Court concludes that they are non-actionable stray remarks.

The allegations that Plaintiff's calls were monitored, that she was excluded from team meetings, and that her seating assignment was changed – including to one location alongside Carter, who was then at least fifty years old – likewise do not support an inference of adverse employment action. *See, e.g., Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d. Cir. 2015) (exclusion from meetings not an adverse employment action); *Higbie v. Kerry*, 605 F. App'x 304, 310–11 (5th Cir. 2015) (moving desk location not an adverse employment action where no employment duties related to the desk's physical location); *Fuller v. Instinet, Inc.*, 120 F. App'x 845, 847 (2d Cir. 2004) (monitoring an employee not an adverse employment action); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006) ("Excessive scrutiny, without more, does not constitute an adverse employment action." (citing cases)). Indeed, Plaintiff's own submissions, which

document the great frequency with which Plaintiff's desk assignment changed while she searched for an operating computer, belie the significance of Plaintiff's temporarily being seated next to Carter. (FAC at 6.)[6] Finally, Plaintiff's complaint includes an allegation that Carter too was excessively monitored by Kinsey and later terminated. (*Id.* at 3.) However, Plaintiff does not allege that she or Carter were older than other members of her team or otherwise suggest that a significant percentage of older individuals in the office were targeted for increased monitoring. Indeed, the complaint does not even establish that other employees were younger than 40, and thus not themselves protected by the ADEA. Accordingly, facts relating to Carter do not suggest any discriminatory animus towards Plaintiff on the basis of age. *See Erhunmwunse*, 301 F. Supp. 2d at 283 (finding, in the context of a Title VII claim, that five other members of a plaintiff's suspect class were terminated was insufficient without evidence "suggesting that the employees were fired around the same time, or that [they] were terminated in disproportionate numbers").

In short, Plaintiff has failed to allege facts that support an inference of age discrimination under the ADEA and NYSHRL, or even under the more relaxed NYCHRL standard. *See Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12-cv-9047 (WHP), 2014 WL 464787, at *3 (S.D.N.Y. Jan. 22, 2014) (dismissing a NYCHRL claim despite co-worker questions regarding plaintiff's retirement); *see also Carter*, 2015 WL 247344, at *7 (reaching the same conclusion on Carter's claim of age discrimination at Verizon).

### E. Disability Discrimination

Plaintiff also claims that Defendants discriminated against her based upon her disability and decision to take temporary medical leave. (Opp'n at 12.)

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to . . . [the] discharge of employees . . . ." 42 U.S.C. § 12112(a); *see also Buckley v. Consolidated Edison Co. of N.Y., Inc.*, 155 F.3d 150, 153–54 (2d Cir. 1998). In order to establish a *prima facie* case of disability discrimination under the ADA and NYSHRL, Plaintiff must show "(1) [her] employer is subject to the ADA; (2) [s]he suffers from a disability within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job; and (4) [s]he suffered some adverse employment action because of [her] disability." *Pahuja v. American University of Antigua*, No. 11-cv-4607 (PAE), 2012 WL 6592116, at *10 (S.D.N.Y. Dec. 18, 2012) (citation omitted)). Again, the Second Circuit has applied the relaxed pleading standard announced in *Littlejohn* to claims under the ADA. *See, e.g., Dooley v. Jetblue Airways Corp.*, No. 15-cv-1356, 2015 WL 9261293, at *4 (2d Cir. 2015).

Here Plaintiff notes only that she received her termination letter via FedEx while she was out of the office on an approved short-term medical leave; she

---

[6] While Plaintiff's opposition brief argues that Kinsey "gave more lucrative sales opportunities to younger co-workers" (Opp'n at 14), no such allegation appears in Plaintiff's First Amended Complaint. Indeed, if anything, the First Amended Complaint suggests that Kinsey's call assignments actually stemmed from nepotism – which is not by itself illegal – and not impermissible age discrimination. (FAC at 3.) *See Carter v. Verizon*, No. 13-cv-7579 (KPF), 2015 WL 247344, at *7 (S.D.N.Y. Jan. 20, 2105) (noting that "favoritism" is "*a fortiori*[] not discriminatory animus (citation omitted)). Accordingly, Plaintiff's claim, even if it had been properly alleged, could not prevail.

never alleges that she was fired even in part *because* she took leave. (FAC at 9.) Rather, Plaintiff states that she did not know why she was terminated, inquired with her union representative, and then learned that Donovan had fired Plaintiff because he was a "hot head" and "rumors [had] it that a union representative persuaded [Plaintiff] to go home early [on] June 21, 2013 to avoid disciplin[ary action] on the 2 calls that led to [her] termination." (*Id.*) Although mindful of the special solicitude afforded to *pro se* complaints, "courts cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations." *Pahuja*, 2012 WL 6592116, at *3 (internal citations omitted); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) (finding the court need not credit "'[g]eneral, conclusory allegations . . . when they are belied by more specific allegations of the complaint'" (alternation in original (quoting *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995))). Here, Plaintiff's First Amended Complaint suggests that Donovan fired her because he believed that she had attempted to thwart Verizon's employee discipline process, a plainly non-actionable motivation. Accordingly, Plaintiff does not allege that her prior suspensions were, in any way, the product of disability discrimination and the allegations pertaining to her termination only imply that she was unable to confront her accusers, not that Plaintiff was terminated due to her decision to take medical leave. Therefore, even a generous reading of the First Amended Complaint cannot support an ADA or NYSHRL claim for disparate treatment based on a disability.

Moreover, "[w]hile the NYCHRL is indeed reviewed 'independently from and more liberally than' federal or state discrimination claims, . . . it still requires a showing of some evidence from which discrimination can be inferred." *Ben-Levy v. Bloomberg L.P.*, 518 F. App'x 17, 19–20 (2d Cir. 2013) (summary order) (quoting *Loeffler*, 582 F.3d at 278)). Accordingly, even under NYCHRL, Plaintiff's claim cannot survive because she does not demonstrate a causal link connecting her termination to the claimed disability and instead attributes her termination to a non-discriminatory motive – namely, Donovan's frustration following rumors completely unrelated to Plaintiff's disability leave. Since Plaintiff fails to state a claim for disability discrimination under the ADA, NYSHRL, and NYCHRL, those claims must be dismissed as to all Defendants.

F. Hostile Work Environment

Plaintiff next argues that she was harassed and forced to endure a hostile work environment in violation of Title VII, ADEA, NYSHRL, and NYCHRL. (Opp'n at 21–23.) Accordingly, the Court will analyze Plaintiff's hostile work environment claims on the basis of (1) race and gender under the Title VII, NYSHRL, and NYCHRL (2) age under the ADEA, NYSHRL, and NYCHRL. (*See id.* at 22.)[7]

I. Race and Gender Claims

Title VII prohibits an employer from discriminating in "compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . ,

---

[7] Neither plaintiff's First Amended Complaint nor her briefing on this motion suggest any allegation of a hostile work environment based on disability. (*See* FAC at 9 (setting forth the only allegation of "discrimination disability" and omitting any reference to a hostile work environment).)

12

which includes requiring people to work in a discriminatorily hostile or abusive environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks omitted). In order to establish a hostile work environment claim under Title VII, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (citation omitted). A plaintiff must demonstrate that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz*, 202 F.3d at 570 (citation and internal quotation marks omitted). Although a single act can meet this threshold if it transforms a plaintiff's workplace, "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). The same standard applies to claims under NYSHRL. *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010).

With respect to NYCHRL, plaintiffs need not show that discrimination was "severe or pervasive." Rather, in order to prevail, a plaintiff bringing a claim under NYCHRL must demonstrate that that "her employer treated her less well, at least in part for a discriminatory reason." *Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 500–01 (S.D.N.Y. 2013) (citation omitted).[8]

Nonetheless, "[t]he broader remediation available under the City law does not allow the Plaintiff to dispense with linking [her] claim of hostility to some attitude that the law forbids." *Williams v. Metro-North Commuter R.R. Co.*, No. 11-cv-7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012).

Generally, a hostile work environment claim is analyzed based on "the totality of the circumstances," including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23); *see also Williams v. Cnty. of Westchester*, 171 F.3d 98, 100–01 (2d Cir. 1999) (holding that, to meet his burden, a plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice (citations omitted)). To be sure, "facially neutral incidents of harassment may be included among the totality of the circumstances that courts consider in evaluating the hostile work environment claim," but only "so long as a reasonable fact-finder could conclude that they were, in fact, based on a protected characteristic." *Morgan v. NYS Attorney General's Office*, 2013 WL 491525, *11 (S.D.N.Y. Feb. 8, 2013) (internal quotation marks, alterations, and citations omitted).

Here, Plaintiff attempts to base her race and gender hostile work environment claims on several instances of rude or insulting behavior from supervisors, including Herrschaft poking her in the back on one occasion. (FAC at 2–6.) But the Second Circuit has cautioned that district courts

---

[8] At summary judgment, but not on a motion to dismiss, a defendant may avail him or herself of the affirmative defense that a plaintiff's allegations amount to no more than "petty slights and trivial inconveniences" to defeat liability. *Mihalik*, 715 F.3d at 111 (citation omitted); *see also Carter*, 2015 WL 247344, at *8 n.10 (noting that most courts treat the affirmative defense available under *Mihalik* as inapplicable on a motion to dismiss).

13

must be vigilant "in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals." *Alfano*, 294 F.3d at 377.

Recently, the Second Circuit found that allegations of merely rude behavior in the workplace – including, among others things, "negative statements," "harsh tones," "replace[ment] at meetings," and an "increased . . . reporting schedule" – were insufficiently severe to state a claim under the employment discrimination laws. *Littlejohn*, 795 F.3d at 321. The rude comments alleged here, which consist of allegations of harsh tones, exclusion from meetings, angry stares, and insulting remarks, along with the alleged monitoring of Plaintiff's calls with customers are no more severe than those present in *Littlejohn* and did not alter the conditions of Plaintiff's work environment. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Demoret v. Zegarelli*, 451 F.3d 140, 150 (2d Cir. 2006) (finding allegations that defendant had "review[ed] Plaintiff's] budget with a fine-toothed comb" insufficient); *Edwards v. N.Y. State Unified Court Sys.*, No. 12-cv-46 (WHP), 2012 WL 6101984, at *6 (S.D.N.Y. Nov. 20, 2012) (finding that Plaintiff's "complaints that her supervisors closely monitored her during the workday and that they sometimes chastised her are not sufficiently severe to create a hostile work environment").

Similarly, Plaintiff's allegation that Herrschaft once poked Plaintiff in the back does not rise to the type of severe and pervasive conduct necessary to establish a hostile work environment claim. *See Carter*, 2015 WL 247344 at *10–11 (dismissing Carter's Title VII and NYSHRL claim in spite of an allegation that "Defendant Kinsey "would place her hands on [Plaintiff's] shoulders and press her breasts against [Plaintiff]" or "would walk by [Plaintiff's] desk, touch [his] shoulders, and ask, 'Do you have some money for me?'" (alterations in original)).

Most importantly, however, the instances of rude conduct and poking alleged by Plaintiff are not tethered to the necessary discriminatory animus required to state a claim under the federal and state law. In fact, only Plaintiff's allegation that Carter – a male, African-American colleague – was monitored and later terminated like Plaintiff bears any linkage to Plaintiff's membership in a Title VII protected class. (FAC at 3.) But as noted above, Plaintiff has not alleged that she and Carter were the only African Americans on her team or that non-African Americans received preferential treatment. *See Erhunmwunse*, 301 F. Supp. 2d at 283 (requiring evidence at summary judgment "suggesting that the [group of African American] employees were fired around the same time, or that the African-American employees were terminated in disproportionate numbers").

Even under the more liberal NYCHRL standard, which omits Title VII's requirement of severe and pervasive conduct, a plaintiff must suggest some discriminatory animus. As stated above, Plaintiff's allegations fail to demonstrate a link between her unpleasant office environment and discriminatory behavior based on race or gender. Accordingly, Plaintiff does not adequately plead that she

14

was treated even "less well" than her co-workers due to some discriminatory animus and, therefore, in violation of NYCHRL.

## 2. Age Claims

A liberal reading of Plaintiff's First Amended Complaint suggests a claim for a hostile work environment based on Plaintiff's age in violation of the ADEA, NYSHRL, and NYCHRL. (*See* FAC 6 (alleging comments regarding age).) Specifically, Plaintiff alleges that Dixon "persistently questioned [her] about retiring" and once remarked on Plaintiff's hearing loss. (*See* FAC 6.) Plaintiff further claims that Dixon and other managers threatened to monitor her, insulted her, and isolated her within the office environment. (*Id.*)

As with a Title VII claim, the Court reviews Plaintiff's ADEA hostile work environment claim to determine whether "the allegations in the complaint . . . give plausible support to the reduced *prima facie* requirements" present on a motion to dismiss. *Littlejohn*, 795 F.3d at 316. As most relevant here, incidents must be sufficiently "continuous and concerted to be considered pervasive," since "minor incidents do not merit relief." *Id.* at 240–41 (citation omitted). Isolated comments regarding a person's age, even in combination with allegations of rudeness and monitoring, do not rise to the level necessary to establish a hostile work environment due to age under the federal and state law. *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 644 (S.D.N.Y. 2011) (allegations of "reassignment to [a new work team], [] changes in his work schedule, [] alleged increased scrutiny of his work, and [a supervisor's] stray remarks regarding his seniority and physical fitness (or lack thereof)" were cumulatively insufficient to support a hostile work environment claim). To state a claim under the city law, however, Plaintiff must establish only that she was "treated less well" than her co-workers due to age discrimination. *See Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015).

Plaintiff's First Amended Complaint alleges that Dixon "persistently questioned [her] about retiring" and once remarked on Plaintiff's hearing loss. (*See* FAC at 6; *see also* FAC at 2.) Plaintiff further claims that Dixon and other managers threatened to monitor her, insulted her, and isolated her within the office environment. (*Id.*) But only Dixon's comments regarding retirement and hearing loss are at all related to Plaintiff's age.[9] Moreover, Plaintiff's First Amended Complaint only specifically alleges a handful of these arguably age related comments during Dixon's brief tenure in Plaintiff's office – including "why don't you retire," "are you old enough to retire," and one comment about hearing loss – and it does not allege that such comments continued after Plaintiff stopped working for Dixon. Indeed, a recent case in this district held that a plaintiff's allegation that defendants "'frequently' told plaintiff 'you're too old' and asked when he was going to retire" was "simply too vague" to support a hostile work environment claim. *See Almontaser v. N.Y. City Dept. of Educ.*, No. 13-cv-5621 (ILG) (VMS), 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014) (alterations omitted). Accordingly, Plaintiff does not sufficiently allege a pervasively hostile work environment "permeated with discriminatory intimidation, ridicule, and insult" based on age in violation of federal

---

[9] A conclusory statement that Lowe "was negative towards older workers" and aimed "suspension and disciplinar[]y actions" toward "workers over 50" (FAC at 3), without any specific allegations of such conduct, is wholly conclusory and insufficient to establish a hostile work environment claim.

15

and state law. *Littlejohn*, 795 F.3d at 320–21 (analyzing a similar Title VII claim (citation omitted)).

While the Court is mindful of the "uniquely broad and remedial" purposes of NYCHRL, the conduct alleged here is "far from a borderline" violation. *Price v. Mount Sinai Hosp.*, No. 07-cv-11318 (BSJ), 2010 WL 4910218, at *6 (S.D.N.Y. Nov. 23, 2010). Although the First Amended Complaint alleges "persistent" questioning by Dixon regarding when Plaintiff planned to retire, Plaintiff does not specify an exemplary handful of occasions on which Dixon commented regarding her age and, in fact, only recounts two such statements. Moreover, Plaintiff alleges only one incident where Dixon remarked on Plaintiff's hearing loss. As such, these incidents are insufficient to support a claim of hostile work environment based on age even under NYCHRL's broad provisions. *See Ardigo v. J. Christopher Capital, LLC*, No. 12-cv-3627 (JMF), 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (finding no NYCHRL claim where a complaint referenced "repeated, offensive, harassing comments" but identified "only three occasions when allegedly offensive statements were made").

### G. Retaliation

Plaintiff finally contends that her employer and supervisors retaliated against her for filing EEO and EEOC complaints in violation of Title VII, ADEA, ADA, NYSHRL, and NYCHRL. (Opp'n at 14–17.) Once again, Plaintiff's claims fail.

Title VII, ADA, ADEA, and NYSHRL prohibit an employer from retaliating against an employee because she has engaged in a protected activity. *See Shepheard v. N.Y.C. Corr. Dep't*, 360 F. App'x 249, 251 (2d Cir. 2010) (ADA retaliation); *Kessler*, 461 F.3d at 205–06 (Title VII and ADEA retaliation); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (NYSHRL retaliation). To establish a *prima facie* case of retaliation under those statutes, a plaintiff must show: "(1) the employee was engaged in an activity protected by [the applicable statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see also Littlejohn*, 795 F.3d at 315–16. Of course, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of [employment discrimination] litigation." *Littlejohn*, 795 F.3d at 316. Moreover, in the absence of a direct link between a complaint and retaliatory action, plaintiffs may demonstrate the necessary causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment [in the form of an adverse employment action]." *Id.* at 319 (citation omitted).

In order to prevail on a NYCHRL retaliation claim, Plaintiff "must show that she took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted). The NYCHRL analysis should proceed "'with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct.'" *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 34 (App. Div. 2009)).

Plaintiff's First Amended Complaint points to "Grievances filed from 9-4-12 to 7-1-13 covering incidents and wrongful termination." (FAC 1.) However, this statement does not clarify where these grievances were filed, the precise number and the specific dates on which they were filed, whether they were official complaints, or whether the conduct complained of related to discrimination based on Plaintiff's membership in a protected class. Indeed, Plaintiff specifically alleges only two complaints related to discrimination: a Verizon EEO complaint regarding age discrimination filed in April 2011 (FAC at 6), and an EEOC complaint alleging race, color, and age discrimination filed January 22, 2013 (*id.* at 1, 6; EEOC Questionnaire).[10] And, while Plaintiff also alleges that Defendants behaved rudely towards her throughout the relevant period, she specifically alleges only three adverse employment actions: (1) a two week suspension imposed in September 2012 (FAC at 7), (2) a thirty-day suspension executed on January 14, 2013 (*id.* at 8), and (3) a final termination in June 2013 (*id.* at 6). *See also* discussion *supra* at 10. Each of these incidents is temporally too remote from Plaintiff's alleged discrimination complaints to support a claim for retaliation.

In fact, the shortest period between Plaintiff's complaint of discrimination and an adverse employment action, as these events are alleged in the operative pleading, is four months. While the Second Circuit has articulated no "bright line" rule for when an alleged retaliatory action occurs too far in time from the protected activity to be considered causally connected, *Gorman–Bakos v. Cornell Co-op Extension of Schenectady City*, 252 F.3d 545, 554 (2d Cir. 2001), it is well settled that when "mere temporal proximity" is offered to demonstrate causation, the protected activity and the adverse action must occur "very close" together, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, (2001) (internal quotation marks omitted). "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *see also Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05-cv-6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) ("[M]any courts in this circuit have held that periods of two months or more defeat an inference of causation."); *Garrett v. Garden City Hotel, Inc.*, No. 05-cv-962 (JFB) (AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (finding no causal connection where there was a two-and-a-half month gap between the alleged protected activity and adverse employment action); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Hussein v. Hotel Employees & Rest. Union, Local 6*, No. 98-cv-9017 (SAS), 2002 WL 10441 (S.D.N.Y. Jan. 3, 2002) (holding that a two-month gap

---

[10] Although the Court would be free to consider the Verizon EEO complaints, which are directly referenced in and form an integral part of the First Amended Complaint, *Matson v. Bd. of Educ.*, 631 F.3d 57, 62 (2d Cir. 2011), neither party has provided the Court with copies of these documents. Without these complaints, the Court cannot properly determine the subject of the complaints and precisely which type of "bias" or "harassment" they address. (*See* Opp'n at 3 (claiming, without citation to the First Amended Complaint that Plaintiff filed a Verizon EEO complaint on September 4, 2012 alleging "bias, harassment, and nepotism" and asserting that Shea and Herrschaft "were conducting inappropriate sexual behavior in the office").)

17

defeated a retaliatory nexus). Accordingly, the timing of Plaintiff's EEOC complaint in January 2013 and her termination in June of the same year cannot raise an inference of causation sufficient to survive a motion to dismiss.

Even taking into account NYCHRL's "'uniquely broad and remedial purposes,'" the timing here cannot support an inference of retaliation. *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 390 (S.D.N.Y. 2014) (quoting *Mihalik*, 715 F.3d at 115 n.12). Once again, the lack of any evidence of temporal proximity between Plaintiff's alleged EEO and EEOC complaints and her suspensions and termination forestall any attempt to establish the necessary causal connection between the protected activity and the adverse employment action. Additionally, Plaintiff has pleaded no specific facts alleging any action other than the EEO and EEOC complaints previously discussed that "'made clear her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that she thought [his] treatment of [the victim] was wrong.'" *Mihalik*, 715 F.3d 112 (quoting *Albunio v. City of New York*, 16 N.Y.3d at 472, 479 (2011) (alterations in original)), or suggest that she was treated differently from other employees as a result of such a complaint. *See Parris v. N.Y.C. Dep't of Educ.*, 975 N.Y.S.2d 42, 44 (N.Y. App. Div. 2013) ("[W]ithout other evidence, five months is not sufficient to establish [NYCHRL's] requisite causal connection."). Accordingly, the Court finds that Plaintiff fails to state a claim for retaliation even under the less demanding NYCHRL standard. Thus, Plaintiff's claim of retaliation based on race, gender, and age under Title VII, the ADEA, the ADA, NYSHRL, and NYCHRL must also be dismissed.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss the complaint is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion located at docket number 19 and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: February 5, 2016
New York, New York

\*   \*   \*

Plaintiff proceeds *pro se*.

Defendants are represented by Howard Wexler of Seyfarth Shaw, LLP, 620 Eighth Avenue, 32nd Floor, New York, New York 10018-1405.